IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) Civil Action No.: 11 C 8095 ) |
| v. | ) ) Suzanne B. Conlon, Judge |
| RESOURCE REAL ESTATE SERVICES, LLC, f/k/a RESOURCE TITLE, LLC, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff First American Title Insurance Company ("First American") brings this action against Resource Real Estate Services, LLC, f/k/a Resource Title, LLC ("Resource"), asserting two counts based on the indemnification provision of a title insurance agency agreement between the parties. Count I seeks a declaration of Resource's obligation to indemnify First American pursuant to the agency agreement and Count II alleges a breach of contract based on Resource's refusal to indemnify. Resource moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), arguing both counts are time-barred by § 735 ILCS 5/13-214.4.[1] Additionally, Resource argues Count I should be dismissed because it is redundant in light of the issues raised in Count II. For the reasons stated below, Resource's motion to dismiss

---

[1] The Seventh Circuit has left open the question of whether a motion under Rule 12(b)(6) or 12(b)(1) is the proper vehicle for challenging whether a plaintiff's claim is time-barred. *Maxwell v. County of Cook*, No. 10-CV-0320, 2011 WL 4639530, at *4 (N.D. Ill. Mar. 17, 2011) (Schenkier, Mag. J.) (surveying decisions suggesting both Rules are appropriate). In this case, there is no practical difference between deciding Resource's motion under either Rule, so the court declines to weigh in on this open question.

is denied.

## BACKGROUND

The following facts are taken from the complaint. First American, a California corporation, is in the business of underwriting title insurance for real property. Compl. ¶ 1. Resource acted as an agent for title insurance companies, soliciting title insurance applications, examining title, collecting premiums, and issuing title insurance policies. *Id.* at ¶ 4. In June 2000, the two companies entered a written agency agreement appointing Resource to act as First American's title insurance agent and representative in Illinois. *Id.* at ¶¶ 6, 8. The agency agreement, as amended in April 2003, contained an indemnification provision stating that Resource, as "AGENT," would: ". . . be liable to COMPANY [First American] for, and hereby agrees to indemnify COMPANY against, any loss, cost or expense, including attorney's fees and costs of litigation, including through the appellate process, sustained or incurred by COMPANY and arising from the fraud, negligence or misconduct of AGENT, or any agent, servant or employee of AGENT, whether or not such loss, cost, or expense shall result from any Policy issued by AGENT." *Id.* at ¶¶ 7, 39.

In July 2000, Stanley and Ingrid Berg, a married couple, purchased real property in Illinois. *Id.* at ¶ 9. The Bergs held title in the property as tenants by the entirety. *Id.* at ¶ 11. In June 2004, eHomeCredit Corporation ("eHome"), a mortgage lender, granted Stanley Berg a loan for $470,000 secured against the property. *Id.* at ¶¶ 12-14. Resource conducted the loan closing and issued a First American title insurance policy to eHome. *Id.* at ¶ 15. In conducting this closing, Resource allegedly breached its duties as a title insurance agent in three ways: (1) failing to obtain a signature from Ingrid Berg, in her capacity as a mortgagor, on the mortgage, (2)

2

failing to include the correct legal description of the property in the mortgage, and (3) waiting sixteen months – until November 30, 2005 – to record the mortgage. *Id.* at ¶¶ 16-19, 23.

In October 2005, approximately six weeks before the mortgage was recorded, Stanley Berg filed a Chapter 7 bankruptcy petition. *Id.* at ¶ 20. The bankruptcy trustee subsequently filed an adversary complaint seeking to avoid the mortgage. *Id.* at ¶ 21. In May 2006, eHome's successor in interest, Wilshire Credit Corp. ("Wilshire"), tendered a title insurance claim to First American arising out of the bankruptcy proceeding and the trustee's adversary complaint. *Id.* at ¶ 22. This tender letter cited Resource's alleged negligent acts as a title insurance agent. *Id.* at ¶ 23. First American subsequently retained counsel to protect Wilshire's interest in the property. *Id.* at ¶ 24. In June 2007, the trustee filed a second amended complaint in the bankruptcy proceeding, adding Ingrid Berg as a party. *Id.* at ¶ 25. This amended pleading also sought to avoid the mortgage, as well as authorization to sell the property free and clear of any interests. *Id.* at ¶ 27. In May 2008, the bankruptcy court entered a final judgment order avoiding the mortgage as to the undivided one-half interest in the property held by Stanley Berg's estate. *Id.* at ¶ 28. The bankruptcy court determined that it lacked jurisdiction to rule on the validity of the mortgage with respect to Ingrid Berg's undivided one-half interest in the property. *Id.* at ¶ 29.

In February 2010, the sale of the property was completed, with the net proceeds equally split between the trustee and an escrow account for Ingrid Berg. *Id.* at ¶¶ 34, 35. The latter funds were subject to the outcome of a separate district court complaint filed by Ingrid Berg. Ms. Berg sought a declaration that her proceeds from the sale were not subject to the mortgage because she did not sign the mortgage as a borrower or mortgager. *Id.* at ¶¶ 31, 32, 35. Pursuant to the title policy, First American also retained counsel to represent Wilshire's interests in the Ingrid Berg

litigation. *Id.* at ¶ 33. The district court granted summary judgment against Ms. Berg, finding that the mortgage encumbered her half-interest in the property. *Berg v. eHome Credit Corp.*, No. 08-CV-5530, 2012 WL 245168 (N.D. Ill. Jan. 25, 2012) (Coleman, J.). Ingrid Berg has appealed this decision and her appeal was pending at the time of this opinion.[2]

In May 2011, First American requested reimbursement from Resource pursuant to the agency agreement's indemnity provision. *Id.* at ¶ 40. On June 23, 2011, Resource advised First American that it rejected any claim for reimbursement relating to the Bergs. *Id.* at ¶ 41. This lawsuit was filed four months later, in October 2011. In Count I, First American seeks a declaratory judgment as to Resource's obligation to indemnify First American for losses, fees, and costs incurred in connection with the Berg bankruptcy proceeding and the Ingrid Berg litigation, on a going forward basis, as well as any other loss stemming from Resource's alleged failure to obtain Ingrid Berg's signature, as mortgager, on the mortgage and to timely record the mortgage. *Id.* at ¶ 42. In Count II, First American seeks damages arising from Resource's alleged breach of the agency agreement in its refusal to pay any claim for reimbursement relating to the Bergs.

## LEGAL STANDARD

When addressing a motion to dismiss, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 493 (7th Cir. 2011). A statute of limitations may be raised in a

---

[2] The court may take judicial notice of proceedings in other courts if those proceedings are directly related to matters at issue. *Green, Jr. v. Warden*, 699 F.2d 364, 369 (7th Cir. 1983). Doing so does not convert a motion to dismiss into a summary judgment motion. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

motion to dismiss if the allegations in the complaint set forth all facts necessary to satisfy the affirmative defense. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

## DISCUSSION

### I. The Date of Accrual

Illinois law sets a two-year statute of limitations on claims against insurance producers. § 735 ILCS 5/13-214.4. In providing services to First American pursuant to the agency agreement, Resource was acting as an "insurance producer." *See, e.g., AYH Holdings, Inc. v. Avreco, Inc.*, 826 N.E.2d 1111, 1125 (Ill. 2005) (an "insurance producer" is the equivalent of an "insurance broker"). The parties agree that this two-year limitations period applies to First American's claims, as it governs "*all* causes of action brought by *any* person or entity under *any* theory against an insurance producer." *Indiana Insurance Co. v. Machon & Machon, Inc.*, 753 N.E.2d 442, 445 (1st Dist. 2001) (emphasis in original).

In moving to dismiss the complaint, Resource argues that the claims relating to both the Berg bankruptcy and the Ingrid Berg litigation accrued on or before November 30, 2005, the date the allegedly deficient mortgage was recorded. Resource argues that the claims necessarily accrued by this date because Resource's alleged negligent acts as an insurance producer all occurred before this date. In arguing that the time of its alleged negligent acts dictates the date of accrual, Resource relies heavily on *Indiana Insurance Company v. Machon & Machon, Inc.*, 753 N.E.2d 442 (1st Dist. 2001). In *Indiana*, the plaintiff insurer alleged that its insurance producer transmitted a document to the insured that incorrectly indicated that the insured's building would be covered against fire damage at "replacement cost." *Id.* at 444. This document was incorrect because the actual policy only provided for "actual cash value" and specifically excluded

"replacement cost" benefits. *Id.* The insurance producer's improper transmittal of this document to the insured occurred at some point prior to July 13, 1995. *Id.* at 446.

As a result of the *Indiana* insurance producer's error, the plaintiff insurer became liable to the insured for "replacement costs" incurred in a fire. *Id.* at 444. In April 1998, the insurer brought a suit against the insurance producer asserting three different theories of recovery: negligence (based on the insurance producer's transmittal of the erroneous document), breach of implied warranty (alleging the insurance producer impliedly warranted that it had authority to deliver the evidence of coverage when it did not actually have such authority), and breach of contract (alleging the insurance producer's delivery of the document was a breach of the agent-company agreement). *Id.* The state appellate court noted that these causes of action accrued when the insurance agent improperly issued the letter to the insured – that is, at some point prior to July 13, 1995. *Id.* Because the suit was not filed until April 1998, nearly three years later, the court affirmed the trial court's dismissal of the case as barred by the two-year statute of limitations. *Id.* at 446.

*Indiana* differs from this case in one crucial respect: in *Indiana*, the claims were all torts based on the contractual relationship between the parties. *Id.* In fact, the *Indiana* decision explicitly notes that none of the plaintiff insurer's claims involved a breach of a contractual indemnity agreement: "Plaintiff did not plead a cause of action for indemnity. A review of plaintiff's own labels of the counts in its complaint is revealing in this regard; [sic] negligence,

breach of warranty and breach of contract. Conspicuously absent is indemnity."[3] *Id.* at 446. In this case, First American's claims *are* based on a contractual indemnity agreement. First American alleges that Resource rejected its claims for reimbursement pursuant to the agency agreement's indemnity provision. The two causes of action pleaded are for "Declaratory Judgment: Obligation to Indemnify" (Count I) and "Breach of Contract: Refusal to Indemnify " (Count II). Compl. ¶¶ 38-48.

This distinction is crucial to determining the proper date of accrual. The rule for determining the date of accrual for a breach of an indemnity provision action was set forth by the Supreme Court of Illinois in *Travelers Cas. & Sur. Co. v. Bowman*, 893 N.E.2d 583 (Ill. 2008). An indemnity claim accrues when a party refuses to tender payment upon the other party's demand. *Id.* at 593; *see also Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004) (Illinois courts hold that a statute of limitations period begins to run when facts exist that authorize one party to maintain an action against another).

Resource argues that *Travelers* is inapposite because it involves the ten-year limitations period provided by § 735 ILCS 5/13-206 rather than the two-year limitations period provided by § 735 ILCS 5/13-214.4. This distinction is irrelevant. *Travelers* guides the court in determining the date of accrual, not the duration of the statute of limitations. Here, the cause of action was required to be commenced within two years of Resource's refusal to fulfill its obligations under the indemnity provision. Resource refused to pay in June 2011 and the suit was filed in October

---

[3] The *Indiana* plaintiff did, in its *ad damnum* clause for each count, seek "indemnification." 753 N.E.2d at 446. The court noted that the use of the word in this context did "not change the basic nature of the causes of action pleaded" for purposes of determining the accrual date. *Id.*

2011. First American's four-month delay in filing suit clearly falls within the two-year period provided by § 735 ILCS 5/13-214.4.[4]

## II.     The Availability of Declaratory Relief

Resource briefly argues that First American's claim for a declaration of Resource's obligation to indemnify (Count I) should be dismissed because it is based on the same issues as its breach of contract claim (Count II).[5] Resource points to a number of decisions where a claim for declaratory relief was dismissed because it was wholly subsumed by other claims or competing lawsuits. *See, e.g., Amari v. Radio Spirits, Inc.,* 219 F.Supp.2d 942, 944 (N.D. Ill. 2002) (Bucklo, J.); *Wireless Marketing Corp. v. Cherokee, Inc.*, No. 98-CV-1406, 1998 WL 719944, at *4 (N.D. Ill. Oct. 6, 1998) (Marovich, J.); *Resource Asset Mgmt., Inc. v. Continental Stock Transfer & Trust Co.*, 896 F. Supp. 782, 785 (N.D. Ill. 1995) (Alesia, J.).

Declaratory judgments serve to clarify and settle legal relationships and afford relief from the uncertainty, insecurity, and controversy that gives rise to a proceeding. *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987). This case is different than the cases cited by Resource because the sought-after declaratory relief (Count I) would serve a purpose distinct from the damages sought under the breach of contract claim (Count II). When First American sought indemnification from Resource, Resource allegedly rejected *"any claim*

---

[4] Both parties propose a number of alternative accrual dates. In light of the court's determination that the proper accrual date was June 23, 2011 – the date on which Resource allegedly refused to indemnify First American – these alternative arguments do not require further discussion.

[5] Resource asserts an alternative argument regarding First American's ability to seek declaratory relief that is dependant on the court's finding that First American's claims are time-barred. Because the court does not find that First American's claims are time-barred, this argument is moot.

for reimbursement sought by First American for *any claims* relating to the Berg matter." Compl. ¶ 41 (emphasis added). There are potentially unrealized losses that may be incurred by First American in either the ongoing Ingrid Berg litigation or in the wake of the Berg bankruptcy. Count I seeks to clarify Resource's obligations to reimburse First American for fees and costs in connection with the Berg matters on a *going forward* basis. Compl. ¶ 42.

A declaratory judgment is appropriate where a real and immediate controversy has not ripened to the point where one party could invoke a coercive remedy but it would be inefficient to delay a decision on the matter. *Tempco*, 819 F.2d at 746. Such is the case here.

## CONCLUSION

Defendant's motion to dismiss the complaint is denied. Defendant shall answer the complaint by August 20, 2012.

ENTER:

August 7, 2012

Suzanne B. Conlon
United States District Judge